ANN BYRNE, Plaintiff in Error, vs. WILLIAM C. BYRNE, Defendant in Error —Writ of Error from Galveston County.

The grounds on which a decree of divorce is sought should be clearly and explicitly alleged in the petition, and the proof must fully sustain such allegations. It is not sufficient that a jury has found that outrages have been committed of such a nature as to render their living together *insupportable*. What is meant in our statute by "*insupportable*" and "*outrageous*" is a question of law. The existence and truth of the facts that amount to such outrages are for the jury to find.

When a divorce is decreed, it is a dissolution of the marital rights in relation to the community property, and the wife is entitled to her share of such property, and to her own separate property, if any she has.

From the transcript in this cause, it appears that William C. Byrne filed his petition against Ann Byrne, his wife, on Feb-

ruary 24, 1847, alleging his marriage with the defendant in 1839; that they were the parents of two infant children; that the defendant conspired, with others, against his life by poisoning him; that while out of his right mind, she procured, or caused him to execute, two certain deeds of conveyance, a copy of only one of which is found in the transcript, the other having been permitted to be withdrawn; that the defendant committed adultery with one Thomas Sherlock; and after more fully describing the deeds, proceeds to impeach the consideration of the one to James P. Nash, and concludes by a prayer for a divorce, *a vinculo matrimonii*, and that the deeds be vacated and annulled.

The answer, filed on May 11, 1847, consists of a general denial, followed by a special denial of all the material allegations of the petition, and concludes, substantially, as a cross bill. Two amendments to the answer were subsequently filed, and also a motion on the part of the defendant. After a motion for a new trial, the court made its decree. The decree, after reciting that certain motions on the part of the defendant, as well as certain demurrers on the same side, were overruled, and that there was a verdict of a jury (which does not appear elsewhere in the record), proceeds to divorce the parties *a vinculo matrimonii;* to make a disposition of each of the children; to vacate one of the deeds; to create a lien for the maintenance of the daughter upon the property embraced in one of the deeds vacated; to order that each of the parties should pay their respective costs, and to give leave that the deed to Nash should be withdrawn from among the papers. Upon this decree a writ of error was sued out.

ALEXANDER for plaintiff in error.

As the petitioner sought to effect two distinct objects by his suit, to vacate two certain deeds, and to obtain a divorce, the petition is multifarious. It contains a misjoinder of two distinct and incompatible causes of action. [Story's Eq. Pl. secs. 530 (note 1), 271, 278 and 538.] It can never be permitted that distinct matters should be united in the same record. [Salvidge *vs.* Hyde, 1 Jac. R. 141, and 5 Madd. 138; Mitford's

Eq. Pl. (by Jeremy), 181, 182.] The infant children should have had a guardian *ad litem* appointed for them by the court, and ought to have been made parties defendant to the suit, as it sought to vacate, and indeed vacated, a deed to them. They had an "interest in the object of the suit." [Story's Eq. Pl. sec. 72.] Nash should have also been made a defendant. "A court will never undertake to adjudicate the rights of parties who are not before it." [5th Statutes, 84, sec. 10; Toler & Crosby *vs.* Ayres, 1 Texas Rep. 398.] The irregularities in the record are sufficient to entitle the case to be reversed and *dismissed*. The decree alone on its face is replete with error. Even if the court could entertain a petition for the vacation of two distinct deeds to different parties, not before the court, nor attempted to be brought before it by the petitioner, and for a divorce, it could not, without appointing a guardian *ad litem*, vacate a deed to infants, and without a prayer to that end, and without the appointment of a commissioner, "create a lien" upon the property embraced in the deed for the maintenance of one of them. Nor could it make any order touching the estate of the petitioner, without decreeing alimony to the wife. At all events, the community property of the husband and wife should have been divided. The husband might dispose of it only "during the coverture" of the wife [4th Stat. p. 4, sec. 4], which may be terminated either by death or by divorce.

GILLESPIE and HANCOCK for defendant in error.

The facts fully warrant the finding of the jury in their conclusion that the complainant was entitled to a divorce as prayed.

The motion made by the defendant below, to have a guardian *ad litem* appointed for the infant children, it is not deemed necessary to consider. It was the duty of the judge to make suitable provision for them during their minority. This was left solely to his discretion under the circumstances of the case, which discretion, it is presumed, he properly exercised. Further than this, they had no interest in the matters pending before the court.

The demurrer and plea of multifariousness, having doubtless the same object in view, are thought equally untenable. The manner of obtaining the deed to the property, and the circumstances attending the whole transaction, constituted one of the principal grounds of the complaint brought to the consideration of the court. It was a matter necessary to be inquired into. When it appears that a subject must, of necessity, be minutely and critically investigated, it would seem strange that it could not be judicially determined, when all the parties to be affected by the decree are properly before the court. [3 Howard's U. S. Rep. p. 411, 412; Story's Eq. Pl. 530–40.]

Mr. Justice Lipscomb delivered the opinion of the court.

Much of the discussion of counsel in this case has been on points that it is believed ought not to be noticed by the court.

The record shows that, after the coming in of the answer, the parties placed themselves under a peremptory rule to go to trial on a particular day, which, by reference to the record, will appear to have been entered on the 29th of May, 1847, and the day of trial was set for the Wednesday following, which, it is believed, would be on the 3d of June, and the parties mutually bound themselves not to ask for a continuance. The application for a continuance, on the part of the defendant below, was made on the 2d of June, and the effort to amend, and for the appointment of a guardian *ad litem*, and the exception to the bill on the ground of being multifarious, was made on the same day. The reasons assigned for asking a continuance, in violation of the peremptory rule so made, were not such as entitled the application to the least consideration. They were repugnant to the recorded rule, and it was trifling with the court to allege that the rule had been entered into, in the absence of the counsel best informed as to the nature of the defense. The court did not err in enforcing the rule.

The same may be said of the refusal of the court to hear and consider the amended answer, because it was incompatible with the peremptory rule to try the cause. And we believe that the decree of the court below must be reviewed, and its correctness

tested, by the petition and answer. The question of the previous marriage of the complainant is not raised by the bill and answer, and all evidence in relation to it was, therefore, very properly excluded by the judge on the trial. We shall discuss, first, the correctness of the decree in granting and decreeing the dissolution of the bonds of matrimony. It will be seen by reference to the decisions of this court, at the present term, in the case of Sheffield *vs.* Sheffield, and in Wright *vs.* Wright, that we have required stronger proof to sustain a divorce from the bonds of matrimony, than perhaps had been thought necessary heretofore by the profession. Our conclusion, however, has been the result of much patient and laborious investigation, and we have the most entire confidence that it is founded on sound principles. We have held that the grounds on which a decree of that character is sought should be clearly and explicitly alleged in the petition, and that the proof must fully sustain such allegations. It is not sufficient that a jury has found that outrages have been committed, of such a nature as to render their living together *insupportable.* What is meant in our statute by "*insupportable*," and "*outrageous*," is a question of law. The existence and truth of the facts that amount to such outrages are for the jury to find.

The jury, in this case, have found that the defendant had been guilty of outrages towards the plaintiff, of such a nature as to render the plaintiff and defendant's living together insupportable. The charges contained in the petition are explicit, and are as flagitious as can well be conceived, in the violation of the most sacred obligation of a wife, and the evidence most conclusively establishes their truth. We think, therefore, that the facts proven fully entitled the plaintiff to a divorce, and that the court below did not err in decreeing a divorce from the bonds of matrimony, and that so much of the decree must, therefore, be affirmed.

We will next examine the second part of the decree.

The plaintiff asked that a deed, made by him to his wife and his two children by her, should be set aside and annulled, on the ground that it was executed by him under such circumstances

that it could not be his deed, as he had not, at the time of its execution, the use of reason, and that it was fraudulently procured by his wife. The jury find " *that the deed is not the act of William C. Byrne, and is null and void, and Ann Byrne takes no title under it.*" The judge decreed "that the deed from William C. Byrne to Ann Byrne be annulled, and held and deemed null and void, so far as Ann Byrne has acquired any right or interest under it; and that the property so conveyed, in the deed aforesaid, be reinvested in the said William C. Byrne, in the same manner as if no such deed had been made to Ann Byrne."

To this part of the decree there has been an objection urged, that the rights of the minor children named in the deed have been disposed of when they were not made parties to the suit. We do not so understand the decree. The minors' interest is not assumed to be acted on by the decree, but only such interest as Mrs. Byrne had acquired. As to her, the deed was cancelled and annulled, and whatever property had been vested in her is divested, and reinvested in William C. Byrne.

It was not competent to render a decree against the minors, because they were not before the court, and their rights were *coram non judice.* Any decree against them, under such circumstances, would be void; but so far as it affects the interest of Ann Byrne, the appellant, it is valid, and is affirmed.

When the divorce was decreed, it was a dissolution of the marital rights in relation to the community property, and the wife, although degraded, was entitled to her share of such property, and to her own separate property, if any she had. And it does seem, that, as to that matter, the suit ought to have been retained, and an account taken, and a separation of the property; and that so much of the decree as remitted the wife to her action for her community rights must be reversed, and the cause, as to that matter, reversed and remanded, for the purpose of accomplishing this object.

Judge Wheeler:— In so far as the judgment of the court below is affirmed, I concur. I give no opinion respecting so much of the judgment as relates to reversing and remanding the cause.